**Bennett A. COHEN, Plaintiff–Appellant,**

v.

**FLUSHING HOSPITAL AND MEDICAL CENTER, Local 1199 National Health and Human Service Employees Union, Dennis Rivera, and Gus Marin, Defendants–Appellees.**

**No. 36, Docket 95–7016.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1995.

Decided Oct. 19, 1995.

Alan R. Sirlin, Brooklyn, NY, for Plaintiff–Appellant.

Barbara E. Hoey, New York City (John F. Gibbons, Shari Prussin, Kelley, Drye & Warren, of counsel), for Flushing Hospital and Medical Center, Defendant–Appellee.

Nicholas S. Fish, New York City (Levy, Pollack, Ratner & Behroozi, of counsel), for Local 1199 National Health and Human Service Employees Union, Dennis Rivera, and Gus Marin, Defendants–Appellees.

Before: OAKES, MINER and MAHONEY, Circuit Judges.

OAKES, Senior Circuit Judge:

This appeal arises out of the alleged wrongful termination of appellant Bennett Cohen by appellee Flushing Hospital and Medical Center ("Hospital"), and the ensuing breach of the duty of fair representation by appellee Local 1199 National Health and Human Service Employees Union ("Union"). After removing the case to federal court, both appellees moved for dismissal on the grounds that the wrongful discharge/failure to represent action was time-barred under the applicable six-month statute of limitations. The United States District Court for the Eastern District of New York, Glasser, J., granted the motions and this appeal followed. For the reasons set forth below, we affirm.

## BACKGROUND

The events surrounding the end of Cohen's employment with the Hospital are somewhat complex, but crucial. We therefore give them close attention here.

Bennett Cohen was an employee of the Hospital and a member of the Union from October 13, 1987, until December 15, 1993. Before Cohen's termination on December 15, he had been absent from work since October 15, 1993. He had initially taken sick leave, but never returned to work or contacted the Hospital about his status. Just before he left in October, Cohen had filed two discrimination complaints with the New York State Division of Human Rights: one against the Hospital, alleging unequal treatment based on creed and disability, and one against the Union, alleging a physical attack, motivated by Cohen's creed and disability, by a union organizer named Marin. Cohen also filed a discrimination complaint against the Hospital with the State of New York Worker's Compensation Board in late October.

In November, Cohen wrote to the Anti–Defamation League ("ADL") about his discrimination claims. The ADL subsequently sent the Union a letter on December 28, 1993, outlining Cohen's allegations of harassment by the Hospital and of unresponsiveness and abusiveness by Marin.

On December 15, 1993, the Hospital sent Cohen a letter stating that because he had not returned to work, it assumed he had resigned. In response, Cohen wrote the Hospital on December 19, 1993, denying that he had resigned and listing a series of complaints regarding his employment. Cohen asked for a full investigation of these complaints, acknowledged that the union "is clearly not working for me," and indicated he would "seek outside assistance." Cohen sent a copy of this letter to the president of the Union on December 19 and again on February 14, 1994. On the Union's copy, he added the postscript "when is our union going to represent me?"

Cohen made no other attempts to contact either the Hospital or the Union, nor did he initiate any of the grievance proceedings provided for in the collective bargaining agreement ("CBA") between the Hospital and the Union. If Cohen wanted to grieve the Hospital's assumption of resignation, he was required under the CBA to present his department head at the Hospital with a written grievance signed by his union representative. Alternatively, when the Union was put on notice that Cohen had been constructively discharged, the CBA allowed it up to ten days to file a grievance with the Hospital if it decided to contest the discharge.

Cohen wrote to the ADL on January 15, 1993, following up on his November letter and informing them that the Hospital had "terminated [his] employment without the union so much as lifting a single finger in my defense, up to and including this day." Cohen re-sent this letter on March 21, 1994. In response, the ADL sent a letter to the Union on April 25, 1994, restating Cohen's harassment allegations, referring to its previous letter, and seeking an answer on how the matter was resolved.

Cohen initiated the instant action in state court on September 29, 1994, alleging wrongful discharge by the Hospital in violation of the CBA and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (1988) ("ADA"), breach of the duty of fair representation by the Union, and assault by Marin. The Hospital and the Union removed the case to federal court on the grounds that Cohen's first and second claims were governed by section 301 of the Labor Manage-

ment Relations Act, 29 U.S.C. § 185 (1988). The Hospital and the Union then moved to dismiss the section 301 claims as untimely.[1] The district court granted the motions in a Memorandum and Order dated December 5, 1994, holding that the section 301 claims were barred by the six-month statute of limitations because Cohen knew or should have known of the Union's breach of the duty of fair representation more than six months before he commenced his action. The district court also dismissed Cohen's ADA claim as untimely and remanded the remaining assault claim against Marin to state court.

In this appeal, Cohen argues that the district court erred in dismissing his section 301 claims as time-barred. He maintains that a triable issue of fact exists as to the accrual date of his cause of action because the Union never told him it was not representing him and, therefore, he neither knew nor should have known until late April 1994 (five months before filing this action) that it had breached its duty of fair representation. Cohen also argues for the first time on appeal that the Hospital's lawyers should be disqualified from representation in this case. We agree with the district court that Cohen's claim is barred by the statute of limitations and find that the disqualification issue is not properly before us. We therefore affirm the dismissal of his claims.

## DISCUSSION

### I. The Statute of Limitations Claim

■ Cohen's claims against the Hospital for wrongful discharge and the Union for

breach of the duty of fair representation combine to create a "hybrid" cause of action governed by a six-month statute of limitations. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 169–171, 103 S.Ct. 2281, 2293–2294, 76 L.Ed.2d 476 (1983) (adopting the six-month limitations period provided by Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1988)); *King v. New York Telephone Co.*, 785 F.2d 31, 33 (2d Cir.1986). The parties do not dispute the application of this six-month period, but disagree on when the clock began to run. In this circuit, it is well settled that "the cause of action accrue[s] no later than the time when plaintiffs knew or reasonably should have known that such a breach [of the duty of fair representation] had occurred, even if some possibility of nonjudicial enforcement remained." *Santos v. District Council*, 619 F.2d 963, 969 (2d Cir.1980); *Legutko v. Local 816, Int'l Bhd. of Teamsters*, 853 F.2d 1046, 1055 (2d Cir.1988); *King*, 785 F.2d at 34.

■ Cohen argues that he could not have known the Union was not representing him until sometime after he received a copy of the ADL's second letter to the Union, mailed on April 25, 1994. This letter restated Cohen's harassment claims against Marin, referencing the ADL's December 28th letter, and requested a response from the Union "indicating how this matter was resolved."[2] Although the Union had not responded to the December ADL letter, or to the copies of the letter Cohen wrote to the Hospital contesting

---

1. We note that although the parties moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), Cohen presented materials beyond the pleadings, including an attorney affirmation, which the district court did not exclude. Under these circumstances, the district court was required to treat the motion as one for summary judgment and accordingly provide "all parties [with] reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b)(6). While it is preferable that courts explicitly follow the procedures required by Rule 12(b)(6) rather than fulfilling them *sub silentio* as in this case, Cohen was given ample opportunity to present his case to the court. *See, e.g., Groden v. Random House, Inc.*, 61 F.3d 1045, 1052–53 (2d Cir.1995); *In re G & A Books, Inc. (M.J.M. Exhibitors, Inc. v. Stern )* 770 F.2d 288, 294–95 (2d Cir.1985), *cert.*

*denied*, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986). We therefore find that the requirements of Rule 12(b)(6) and Rule 56 were satisfied for the purposes of this appeal.

2. Cohen cites this letter as grounds for reasonably believing that the Union "was working on his matters." Brief for Appellant at 13. We fail to see how the ADL's reiterative communication on a discrimination claim dating from before Cohen left the Hospital could give rise to a belief that the Union was representing Cohen on his termination grievance, especially as the Union never responded.

We also note that Cohen relied on this same thin thread to weave an argument in the district court that the Hospital and the Union were actually in "negotiations" over his termination until

his termination which he sent the Union on December 19, 1993, and February 14, 1994, Cohen contends that it was only when the Union did not respond to the ADL's April 25 letter that he reasonably should have known that the Union had breached its duty of fair representation.

We find no merit in Cohen's position. As evidenced by his January 15, 1994, letter to the ADL in which he reported that he had been terminated "without the union so much as lifting a single finger in my defense, up to and including this day," Cohen was well aware of the Union's failure to take action on his termination. *See Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 165 (2d Cir. 1989) ("[A] breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains."); *Demchik v. General Motors Corp.,* 821 F.2d 102, 105 (2d Cir.1987) ("[T]he statute of limitations begins to accrue ... when the employee had actual or constructive notice that the union has breached its duty of fair representation."). Even if Cohen entertained hopes of future representation by the Union, he knew that it had done nothing as of January 15, 1994 to pursue his grievance against the Hospital. This knowledge was sufficient to start the statute of limitations running.

■ A grieved employee cannot rely on a union's lack of response to informal correspondence to toll the statute of limitations when he has failed to invoke the formal grievance procedures available to him under a collective bargaining agreement. *Legutko,* 853 F.2d at 1054; *Sosbe v. Delco Electronics Div. of General Motors Corp.,* 830 F.2d 83, 87 (7th Cir.1987). In *Legutko,* as here, the plaintiff relied on the union's failure to respond to a letter as the basis for establishing the date of accrual of his hybrid claim. We held that when a plaintiff does not avail himself of the established grievance mechanism, but instead chooses "to follow his own, informal approach," non-responsiveness to a letter "does not constitute a proper basis for tolling the statute of limitations." 853 F.2d at 1054–55. Because Cohen did not invoke the grievance process or even contact the

Union directly about his termination, the Union's lack of response did not extend the accrual date of his cause of action. The authorities cited by Cohen do not strengthen his claim, as they all involve plaintiffs who made use of available grievance procedures. *See, e.g., Demchik,* 821 F.2d at 104 (union represented plaintiff but failed to inform him of grievance withdrawal); *Monroe v. Gotham Bldg. Maintenance Corp.,* No. 90 Civ. 7609, 1992 WL 80717, 1992 U.S.Dist.LEXIS 4279 (S.D.N.Y. April 8, 1992) (plaintiff filed a formal grievance). While we accept the general premise of these cases that pinpointing an accrual date can be difficult when a union has been less than cooperative, we note that Cohen's diligence in pursuing his grievance does not benefit from comparison with other plaintiffs.

The inaction of the Union, while not commendable, does not permit the statute of limitations to be tolled. *Metz v. Tootsie Roll Indus., Inc.,* 715 F.2d 299, 303–04 (7th Cir. 1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). In *Metz,* the plaintiff was discharged for failure to return from sick leave and she notified her union of the grievance. *Id.* at 300. Under the collective bargaining agreement, her union was required to file such a grievance within five days of discharge. *Id.* Her union took no action in the five days or at any time thereafter, despite Metz's repeated complaints. *Id.* at 301. The court found that "[a]t some point prior to the six month statutory period, the appellant should have realized that the Union was taking no action on her behalf.... [and] cannot be allowed to sit back and claim a lack of notice in light of circumstances such as these." *Id.* at 304. The court went on to say:

We recognize, of course, that the Union should be encouraged to promptly notify the employee of its decision to pursue, or not to pursue, his or her claim and that this prompt action will help preserve any legal remedies available to the employee. To say, however, that the running of the statute of limitations will be postponed indefinitely until actual notification is received from the Union or the employer,

April 25, 1994. In light of the absence of this argument on appeal, we can only assume that Cohen has replaced it with the equally meritless

contention that he relied on the letter as an indication of the Union's efforts on his behalf.

would be contrary to the policy of prompt resolution. Lack of notification would leave claims unresolved indefinitely and leave the procedure open to all of the vices which statutes of limitations were intended to eliminate.

*Id.*

We find *Metz* wholly apposite as a matter of fact and law to the instant case, and adopt its reasoning here. Unlike *King, supra,* where we distinguished *Metz* on the basis of a union's active pursuance of King's grievance for eight months, the Union in this case never represented that it would pursue Cohen's claim or took any steps to do so. Under the CBA, the Union had up to 10 days to file a grievance on Cohen's behalf. When it did not, Cohen should have known at some point in the ensuing six months that the Union was not representing him. As his letter to the ADL reveals, Cohen in fact did know of the Union's breach as of January 15, 1993.

Cohen raises the issue of fraudulent concealment by the Hospital and the Union for the first time in his appellate brief. If this issue were properly before us, which of course it is not, we would nevertheless find Cohen's contentions unpersuasive. When a union's action or inaction rises to the level of fraudulent concealment of its breach, the statute of limitations is tolled until the plaintiff discovers the fraud. *See Baskin v. Hawley,* 807 F.2d 1120, 1130 (2d Cir.1986). Fraudulent concealment is predicated on a union deliberately misleading the plaintiff about a breach which he failed to discover during the limitations period despite the exercise of due diligence. *See Keating v. Carey,* 706 F.2d 377, 382 (2d Cir.1983). Diligence proves to be a missing ingredient in this case, as there is no indication that Cohen made any effort to determine the Union's stance on his termination. As noted by the First Circuit in a similar case, "[w]e are not talking about anything particularly difficult, costly, or time-consuming. A simple phone call could have produced the relevant information." *Demars v. General Dynamics Corp.,* 779 F.2d 95, 99 (1st Cir.1985). Moreover, even if Cohen had pursued his grievance more vigorously, there is nothing in the record that would lead us to conclude that the Union misled him in any way.

We therefore find that Cohen's actions against the Union and the Hospital are time-barred, and that his hybrid section 301 claim was properly dismissed.

II. Cohen's Disqualification Claim

On appeal, Cohen alleges that the Hospital's lawyers should be disqualified due to a conflict of interest arising from a meeting between Cohen and a member of the Hospital's law firm. A review of the record reveals that Cohen failed to move for disqualification of the Hospital's law firm. Under the law of this circuit, a party may not seek on appeal relief that he failed to seek below. *Schmidt v. Polish People's Republic,* 742 F.2d 67, 70 (2d Cir.1984); *Terkildsen v. Waters,* 481 F.2d 201, 204 (2d Cir.1973); *First Nat'l Bank v. Pepper,* 454 F.2d 626, 636 (2d Cir.1972). We therefore do not reach the issue of the disqualification of the Hospital's lawyers.

### CONCLUSION

We affirm the judgment of the district court dismissing Cohen's section 301 claims as time-barred under the six-month statute of limitations.